# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

*In re* Application of:

THE REPUBLIC OF ECUADOR and
DR. DIEGO GARCIA CARRION, the
Attorney General of the Republic
of Ecuador,

   Applicants,

               CASE NO. 4:11mc88-RH/CAS

For the Issuance of a Subpoena Under 28
U.S.C. § 1782(a) for the Taking of a
Deposition of and the Production of
Documents by TestAmerica Laboratories, Inc.
for Use in a Foreign Proceeding.

_____/

## ORDER ALLOCATING THE COST
## OF DOCUMENT PRODUCTION

The Republic of Ecuador served a subpoena *duces tecum* on TestAmerica Laboratories, Inc. TestAmerica produced nearly 300,000 pages of documents in response to the subpoena. This order requires the Republic to bear a portion of the actual cost incurred by TestAmerica to produce the documents. The order does not require the Republic to pay TestAmerica's legal fees.

I

Some of the subpoenaed documents were electronically stored and no longer reasonably accessible; the documents could be accessed only by restoring a nonoperational computer system known as Labnet. By order entered on August 16, 2012, the Republic was required to advance $10,160, the projected cost of an outside vendor's services restoring Labnet. The order provided that ultimate responsibility for the $10,160 could be reallocated by a further order. *See* Fed. R. Civ. P. 45(d)(1)(D). As it turns out, the outside vendor charged only $2,984.96 to restore Labnet.

The actual salary of TestAmerica employees for the time they devoted to the document production was $5,677.76. TestAmerica incurred outside attorney's fees of $47,250.00, plus reimbursable expenses of $327.30, for a total of $47,577.30.

II

Under Federal Rule of Civil Procedure 45, a court must protect a nonparty "from significant expense resulting from compliance" with a subpoena. Fed. R. Civ. P. 45(c)(2)(B). But not all expense is "significant"; otherwise the rule would simply require payment of all expense of compliance. Further, "[a] nonparty with an interest in the litigation may be required to bear a portion of the costs of producing the subpoenaed documents or other materials." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 & n.23 (3d ed. 2008) (collecting cases). TestAmerica is not a party to the current litigation, but it served

as a paid expert in related, prior litigation; it can reasonably be required to absorb more of the cost of document production that could an unrelated nonparty.

The question of whether the Republic should be required to reimburse all or part of TestAmerica's expense, and if so how much, is committed to the court's discretion. The burden of establishing the amount of expense incurred in complying with the subpoena, and the reasonableness of incurring that expense, is on TestAmerica.

III

Under all the circumstances, the Republic should be required to pay half the cost of restoring Labnet and half the salary of the TestAmerica employees for the time they devoted to the document production. The Republic sought the documents for its own purposes; it is fitting that the Republic bear a substantial part of the actual cost of compliance. But TestAmerica chose to mothball Labnet, knowing that this would make it more difficult to access documents that TestAmerica must have known might be needed again. The documents were relevant, after all, to a long-running, intensely litigated dispute with billions of dollars at issue; so far as this record reflects, neither side had at that time or has since left any stone unturned. Mothballing Labnet led to expense to restore it and undoubtedly also increased the time of TestAmerica employees devoted to the document production. Also, TestAmerica's role as a prior expert, and its

reasonable decision to consult with Chevron on the document production, probably increased the salary expense and in any event make it appropriate for TestAmerica to bear some of the expense.

TestAmerica should bear all its own outside attorney's fees. TestAmerica's role in the prior litigation and its decision to consult with Chevron support this result. Also, TestAmerica greatly exaggerated the cost of compliance—for example, missing the cost of restoring Labnet by a factor of more than three—and sought to profit from the undertaking by charging for its employees' time at their standard billing rates. Spending $47,000 in fees in an effort to recover $250,000 or so might be reasonable; spending $47,000 to avoid less than $9,000 in costs is not. Had TestAmerica accurately estimated the cost in advance, it surely would not have incurred this amount of fees. Indeed, had TestAmerica accurately estimated the cost in advance and asked for that amount from the Republic, the Republic might have sent back a check. The Republic ought not bear the cost of TestAmerica's miscalculation.

IV

For these reasons,

IT IS ORDERED:

The portion of TestAmerica's expenses that the Republic must bear is $4,331.36, calculated as follows: $2,984.96 to restore Labnet, plus $5,677.76 in

employee salaries, equals $8,662.72, divided in half equals $4,331.36.  Because the Republic advanced a greater amount, TestAmerica must refund the difference.

    SO ORDERED on March 4, 2013.

                                                      s/Robert L. Hinkle
                                                     United States District Judge